## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CHESTER RONEY,
Individually and as Executor of the
Estate of Henry Clay Roney, Jr.,

                              Plaintiff,

v.                                          CIVIL  ACTION  NO.  3:05-0788

GENCORP, et al.

                           Defendants.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to dismiss of Defendants American Chemistry Council, Goodrich Corporation, PPG Industries, Inc., Shell Oil Company, and Zeneca, Inc., which seeks to dismiss Counts III-VIII of the complaint (Doc. 49).  The other Defendants, Goodyear Tire & Rubber Company (Doc. 64),  Rhone-Poulenc, Inc. (Doc. 51), Air Products & Chemicals, Inc. (Doc. 65),  Ethyl Corporation (Doc. 66), Olin Corporation (Doc. 67), Pactiv Corporation (Doc. 68), Dow Chemical Company (Doc. 53),  Union Carbide Corporation (Doc. 53), Honeywell International, Inc. (Doc. 53), Tenneco Automotives, Inc. (Doc. 63), Georgia Pacific Corporation (Doc. 60), Chevron U.S.A. Inc. (Doc. 54), Pharmacia Corporation (Doc. 58), Hexion Specialty Chemicals, Inc. (Doc. 52), Uniroyal, Inc. (Doc. 99), and Polyone Corporation (Doc. 149), have separately joined in this motion to dismiss.  In addition, Gencorp, Inc. filed a separate motion to dismiss Counts I-IV (Doc. 55).  For the following reasons, the Court **DENIES in part, and GRANTS in part** the motion to dismiss of Defendants American Chemistry Council, et al. and its joinder motions, and **DENIES** Gencorp's motion to dismiss.

## I.  FACTUAL BACKGROUND

The Plaintiff, Chester Roney as individually and as executor of the estate of Henry Clay Roney, Jr., filed this action on September 23, 2005.  The Plaintiff's complaint lists three categories of Defendants: (1) Gencorp as Henry Roney's remaining employer; (2) Manufacturer/Supplier Defendants; and (3) Conspiracy Defendants.  The complaint contains eight counts: (1) employer intentional tort claim; (2) fraud claim against the employer; (3) civil conspiracy to commit tortious conduct by all Defendants; (4) aiding and abetting of Manufacturer/Supplier Defendants and Conspiracy Defendants of the employer's intentional torts; (5) breach of duty to warn by Manufacturer/Supplier Defendants; (6) strict liability in tort of Manufacturer/Supplier Defendants; (7) fraud by Manufacturer/Supplier Defendants; (8) punitive damages against all Defendants.

The "Manufacturer/Supplier Defendants" are: Borden Chemical, Inc., Dow Chemical Company, Ethyl Corporation, Georgia Pacific, Inc., Goodrich Corporation, Honeywell International, Inc., Pharmacia Corporation, Pactiv Corporation, PPG Industries, Inc., Shell Oil Company, Tenneco Automotives, Inc., Union Carbide Corporation, and Uniroyal, Inc.  The "Conspiring Defendants" are: Air Products & Chemicals, Inc., The American Chemistry Council, Hexion Specialty Chemicals, Inc., Dow Chemical Company, Ethyl Corporation, Georgia Pacific Corporation, Honeywell International, Inc., Goodyear Tire & Rubber Company, Chevron U.S.A., Inc., Olin Corporation, PolyOne Corporation, Rhone-Poulenc, Inc., and Zeneca, Inc.

Mr. Roney was employed by Pantasote, Inc. at its Point Pleasant, West Virginia plant in 1965, and worked at that plant until 1982.  In 1973, Gencorp became an owner of the plant, and an employer of Mr. Roney.  Compl. at ¶ 16.  While an employee at the plant, Mr. Roney worked as a reactor cleaner and operator, cleaning tanks, vessels and vats, handling raw materials, operating

machinery and otherwise performing tasks, all of which involved working with and begin exposed to vapor, steam and fumes containing vinyl chloride monomer (VCM). *Id.* at ¶ 17. During the course of his employment, Mr. Roney was exposed to VCM, and could often smell the VCM while he was working. *Id.* The Plaintiff alleges that the exposure of Mr. Roney to VCM was the direct and proximate cause of his developing cancer of the liver known as hepatic angiosarcoma. *Id.* at ¶ 19. Mr. Roney developed symptoms of this cancer on September 30, 2003, and died on October 4, 2003. Plaintiff alleges that his death was the direct and proximate result of the misconduct of the Defendants.

## II.  DISCUSSION

### A.    Gencorp's Motion to Dismiss Counts I-IV

In Count I, Plaintiff asserts an intentional tort claim against Gencorp as Plaintiff's decedent's remaining employer for its intentionally exposing him to VCM which caused his death.[1] In its motion to dismiss, Gencorp argues that this count should be dismissed because Plaintiff failed to file a workers' compensation claim as a prerequisite to filing the employer intentional tort lawsuit. In response, Plaintiff argues that he did not need to file under the workers' compensation system because the applicable statute specifically provides an exception to employer "deliberate intention" actions, and therefore, he can file a civil action directly.

The West Virginia Workers' Compensation Statute provides immunity to employers from lawsuits brought by employees to recover damages for their injury or death sustained at the

---

[1]Plaintiff contends that Plaintiff's decedent was initially employed by Pantasote, Inc. at the Point Pleasant, West Virginia plant. During the course of Plaintiff's decedent's employment, Plaintiff claims that General Tire & Rubber Co., now known as Gencorp, Inc., acquired a one-half interest in the plant, and now Pantasote is no longer in existence. Therefore, Plaintiff asserts claims against Gencorp as the remaining employer. *See* Compl. at ¶ 8a.

workplace.  *See* W. VA. CODE § 23-2-6 (2005). The immunity afforded employers is not easily lost.

"When an employer subscribes to and pays premiums into the Fund, and complies with all other

requirements of the Act, the employer is entitled to immunity for any injury occurring to an employee

and shall not be liable to respond in damages at common law or by statute."  *State ex rel Frazier v.*

*Hrko*, 510 S.E.2d 486, 493 (W. Va. 1998).  Such immunity can only be lost in one of two ways: "(1)

by defaulting in payments required by the Act or otherwise failing to comply with the provisions of

the Act, or (2) by deliberately intending to produce injury or death to the employee."  *Smith v.*

*Monsanto Co.*, 822 F.Supp. 327 (S.D.W. Va. 1992); *Bell v. Vecellio & Grogan, Inc.*, 475 S.E.2d 138,

141 (W. Va. 1996).

It is the exception based upon the deliberate intention of the employer that is at issue in this

case.  *See* W. VA. CODE § 23-4-2(c).  Under this exception, an employee can recover excess damages

over the amount received under the workers' compensation scheme.  *Mayles v. Shoney's, Inc.*, 405

S.E.2d 15, 18 (W.Va. 1990).  In 1978, the West Virginia Supreme Court of Appeals interpreted the

deliberate intention portion of  § 23-4-2 rather broadly to mean that: "an employer loses immunity

from common law actions where such employer's conduct constitutes an intentional tort or willful,

wanton, and reckless misconduct."  *Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d 907, 910-911

(W. Va. 1978).  In response to this ruling, the West Virginia Legislature amended  § 23-4-2 in 1983

to make it more difficult for an employer to lose the immunity provided by the compensation laws.

 *Bell*, 475 S.E.2d at 143.  In effect, the amendment removed from the statute the common law

definition of deliberate intention as established in *Mandolidis*, and specifically set out statutory

requirements for recovery in a deliberate intent action.  *Id.*  In order to meet the statutory

requirements, a plaintiff must prove:

(A)     That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B)     That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(C)     That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D)     That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(E)     That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. VA. CODE § 23-4-2(d)(2)(ii)(A)-(E)(2005).

In 2005, the West Virginia Legislature amended the deliberate intention language in the statute to read:

If injury or death result to any employee from the deliberate intention of his or her employer to produce the injury or death, the employee, the widow, widower, child or dependent of the employee has the privilege to take under this chapter and has a cause of action against the employer, as if this chapter had not been enacted, for an excess of damages over the amount received or receivable in a claim for benefits under this chapter, *whether filed or not*.

§ 23-4-2(c) (emphasis added).  Similar language was added to the statutory requirements set out in

§ 23-4-2(d)(2)(ii)(A)-(E), as quoted above.  Subsection E provides for the recovery of injury resulting

from the employer's deliberate intent "whether a claim for benefits under this chapter is filed or not."

§ 23-4-2(d)(2)(ii)(E).  The amended version of this statute is effective "to all *injuries occurring and*

-5-

*all actions filed* on or after the first day of July, two thousand five." *Id.* at § 23-4-2(f) (emphasis added).

Plaintiff points to the effective date of the amended statute, and argues that since he filed his action after July 1, 2005, the amended provision applies. Therefore, he argues, the language "whether filed or not" in the amended statute indicates that he did not need to file a claim before filing a lawsuit in court. However, Gencorp argues that the amended version of the statute does not apply because the time of the injury is determinative of what statute applies, and in this case, the injury occurred before the 2005 amendments. Gencorp argues that case law supports its claim that the filing of a claim before a lawsuit is mandatory.

### 1.      Applicable Statute

The first issue the Court must resolve is what version of the Workers' Compensation Act applies to this action. The Court agrees with Defendant that West Virginia courts have historically interpreted previous versions of the workers' compensation statute as intending for the statute in effect at the time of injury to control. *See, e.g., Smith v. State Workmen's Compensation Com'r*, 197 S.E.2d 229, 230 (W. Va. 1975) ("[t]he statutes governing the rights and duties of the employer and claimant and the powers and responsibilities of the Commissioner are those that were in effect on the date of the injury"); *see also, Gallardo v. Workers' Compensation Com'r*, 373 S.E.2d 177, 180 n.5 (W. Va. 1988) ("We have traditionally held that it is the compensation act existing at the time of the injury that gives rise to the claimant's substantive rights").

However, when faced with statutory interpretation, the Court must first look to the precise language used by the West Virginia Legislature. *State ex rel Roy Allen S. v. Stone*, 474 S.E.2d 554, 560 (W. Va. 1996)(A court must "look first to the statute's language. If the text, given its plain

meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed."). When the language is clear, a court does not interpret the language, but rather applies the statute. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." *State v. Jarvis*, 487 S.E.2d 293, 294 (W. Va. 1997)(citations omitted); *see also State v. Elder*, 165 S.E.2d 108, 111 (1968)("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

Applying these principles, the language of the 2005 amended statute is very clear. It specifically states that it applies to " all *injuries occurring and all actions filed* on or after the first day of July, two thousand five." W. VA. CODE § 23-4-2(f). The plain meaning of the language indicates the Legislature's intention to make the new provisions apply to both injuries occurring after July 1, 2005, and also to actions filed after July 1, 2005. The Legislature was aware that historically the courts applied the version of the workers' compensation statute in existence at the time of injury. The language chosen in the effective date clause expresses the Legislature's intent that this statute should be an exception to that general rule. This Court must give the plain language full effect. Because the Plaintiff filed this action after July 1, 2005, the 2005 amendments apply.

### 2. Necessity of filing claim for benefits before filing lawsuit

The next question is whether Plaintiff was required to file a claim under the workers' compensation system as a prerequisite to filing a lawsuit. Again, the Court must examine the plain language of the statute. In providing for the deliberate intent exception to the employer's immunity, the statute states that an employee has a "cause of action against the employer...for any excess of damages over the amount received or receivable *in a claim for benefits* under this chapter, *whether*

-7-

*filed or not*." W. VA. CODE § 23-4-2(c).  The highlighted clauses indicate the 2005 amended provisions.  The plain meaning of this language provides an employee with a separate cause of action for excess damages above those received in a claim for benefits under the workers' compensation system whether or not an employee has filed such a claim.  The statute clearly states that filing a claim for benefits under the workers' compensation scheme is not a prerequisite for filing a lawsuit.

Further support for this position is found in the section of the statute setting out the five elements to prove in a deliberate intent case.  The "immunity from suit" under this section may be lost if the employer acted with deliberate intention as proven by the five elements set out in the statute.  *Id*. at § 23-4-2(d)(2). The final element of this claim is that the employee suffered "serious *compensable* injury or *compensable* death as defined in [this chapter] *whether a claim for benefits under this chapter is filed or not...*" *Id*. at § 23-4-2(d)(2)(ii)(E).  The highlighted amended language indicates that an employee may bring a suit against an employer if he can prove a compensable injury as defined under the workers' compensation system regardless of whether that employee has filed a claim for benefits under the system.  The language is unambiguous and clear.  In applying the plain meaning of the statute, the Court concludes that Plaintiff's claim does not fail because he did not first file a claim under the workers' compensation system before filing a lawsuit.

In an attempt to avoid the plain language of the statute, Gencorp argues that case law is settled on the issue that a plaintiff filing a civil action under § 23-4-2 must first file a claim under West Virginia's workers' compensation system.  In support of this claim, Defendant directs the court to several cases within this circuit.  However, none of these cases directly reached the relevant question, and all were decided prior to the 2005 amendments.  The issue in *Ball v. Joy Manufacturing Co.* was whether exposure alone to toxic chemicals was a compensable injury under the workers'

compensation statute.  755 F.Supp. 1344, 1354 (S.D.W. Va. 1990).   The court determined that it was not.  *Id.* at 1357.  After reaching this conclusion, the court offered its commentary that had it decided that exposure alone was a compensable injury, the plaintiff's claim would have failed because he did not first file under § 23-4-2.  *Id.* at 1357-1358.  Because the court had already determined that the plaintiff did not have a viable claim, its discussion as to mandatory prerequisites for filing a lawsuit was *dicta*.

The other case cited by Defendant also fails to directly address the question of whether a plaintiff filing a civil action under § 23-4-2 must first file a claim under the workers' compensation system.  Like the *Ball* decision, the court in *Hamilton v. Pilgrim's Pride Corp.* did not need to address the issue of whether plaintiff was required to first file a claim under § 23-4-2 in order to reach its ultimate conclusion.  314 F.Supp.2d 630 (N.D.W. Va. 2004).  In this case, the court  first held that the plaintiff's complaint was barred by the statute of limitations.  *Id.* at 634-637.  After already determining that the plaintiff did not have a valid deliberate intention claim, the court proceeded to find that the filing of a claim under § 23-4-2 was a prerequisite to bringing a lawsuit.  *Id.* at 637-638. This finding was not necessary to the ultimate conclusion of the case, and therefore, was also *dicta*.

The *Pilgrim's Pride Corp.* case cited to another case in the Northern District in support of its finding.  In *Knox v. Laclede Steel Co.*, the court was faced with the question of whether a plaintiff's deliberate intention action against his employer "arises under" the West Virginia workers' compensation statute for purposes of determining removability.  861 F.Supp. 519, 522-523 (N.D.W. Va. 1994).  In this context, the court had to determine whether the deliberate intent provisions were an integral part of the state's workers' compensation scheme, resolving all doubts in favor of remand. *Id.* at 521-522.  For the specific purpose of removal, the court found that a deliberate intention action

arose under the workers' compensation statute.  *Id.* at 523.  The court was not faced with the question of whether the plaintiff was required to file a claim under § 23-4-2 before filing the lawsuit, probably due to the fact that the plaintiff in this case had filed a claim for benefits before a lawsuit.  The *Knox* case is not determinative on the issue.

Upon review of the case law, it is evident that no court in West Virginia and no court applying West Virginia law has directly held that a plaintiff is required to file a claim for deliberate intention under § 23-4-2 before filing a lawsuit in court.  As such, this Court is only left with the language of the statute itself.  As explained above, the statute clearly states that an employee has a cause of action for injury caused by the deliberate intent of the employer in excess of a claim for benefits under the workers' compensation scheme regardless of whether the employee had actually filed such a claim. The language of the statute does not indicate an intention by the Legislature to require a plaintiff to file first under the workers' compensation scheme.  In two separate places, the statute explicitly suggests otherwise.  Because Plaintiff was not required to first file a claim under the West Virginia Workers' Compensation Statute, and Plaintiff has alleged sufficient facts to support the five statutory requirements as laid out in § 23-4-2(d)(2)(ii), his deliberate intent cause of action in Count I is not dismissed.

Dismissal is also not warranted for the claims asserted against Gencorp in Counts II- IV for the reasons argued in Gencorp's motion relating to the immunity established by § 23-4-2.[2] Employers are provided immunity from all suits by employees for injuries occurring in the

---

[2]Gencorp only argued that Count II should be dismissed under the immunity of § 23-4-2.  The Court will examine the arguments for dismissal of these claims joined by all Defendants based upon other reasons, such as failure to plead with particularity, in the sections below.  In this section, the Court only notes that those claims do not fail under § 23-4-2.

workplace, except in civil suits for excess damages allegedly caused by the "deliberate intention" of the employer.  An employee can prove that the employer acted with deliberate intention in one of two methods.  *Mayles v. Shoney's, Inc.*, 405 S.E.2d 15, 20 (W. Va. 1990).  As previously discussed, one method is to prove the five part requirements set out in § 23-4-2(d)(2)(ii).  *See supra* II.A..  The second method is to prove "that the employer...acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee."  *See* W. VA. CODE § 23-4-2(d)(2)(i).  If an employee can prove deliberate intention under either subsection, then the employer loses its workers' compensation immunity, and may be subjected to a suit for damages as if the Workers' Compensation Act "had not been enacted."  § 23-4-2(c); *see also Erie Ins. Property and Cas. Co. v. Stage Show Pizza, JTS, Inc.*, 553 S.E.2d 257, 265-266 (W. Va. 2001).  An employee is free to bring any claim for injury or death caused by the deliberate intent of the employer if proven.

In the fraud claim alleged in Count II, Plaintiff claims that Gencorp "acted with the deliberate intent to cause plaintiff's decedent to suffer injury."  Compl. at ¶ 187.  Plaintiff further claims that Gencorp "deliberately misrepresented the hazardous and toxic effects of vinyl chloride, thereby acting with the intent to injure plaintiff's decedent, who developed an occupational disease as a direct result."  *Id.* at ¶ 188.  If Plaintiff proves these allegations, then Gencorp loses its immunity from the fraud cause of action under § 23-4-2(d)(2)(i).  Counts III and IV serve to hold all the Defendants jointly liable for their intentional conduct, including Gencorp.  In terms of § 23-4-2, these Counts are not subject to dismissal.[3]

---

[3]In a footnote, Gencorp briefly argues that this fraud claim also fails for lack of particularity, and refers the Court to the other Defendants' motion regarding the fraud allegations of Count VII. The allegations in Count VII against the Manufacturer/Supplier Defendants are substantially similar to the allegations in Count II against Gencorp.  Accordingly, the discussion addressing the adequacy of pleading for Count VII would apply to any remaining argument Gencorp may have about Count II.

The Court notes that the Legislature intended "to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter." § 23-4-2(d)(1). The question of whether the Plaintiff can prove that Gencorp acted with deliberate intention is saved for future determinations. At this point in the litigation, Plaintiff has alleged sufficient facts in his complaint to support the loss of employer immunity. Accordingly, Plaintiff's claims against decedent's employer for fraud, civil conspiracy and aiding and abetting are also not dismissed.

**B.     Defendants' Motions to Dismiss Counts V & VI - Product Liability Claims**

The Manufacturer/Supplier Defendants filed for dismissal of the Plaintiff's product liability claims asserted against them in Counts V and VI. In Count V, Plaintiff asserts claims for a breach of the failure to warn, and in Count VI, Plaintiff asserts a claim for strict product liability. Defendants' only argument for dismissal of these two counts is that Plaintiff has not identified the specific Defendant that allegedly manufactured the product claimed to have caused decedent's injury. Defendants argue that Plaintiff has not identified to which manufacturer's VCM his decedent was exposed; in what quantities and over what period of time; or that the exposure of a particular Defendant's product proximately caused the injuries.

Plaintiff correctly states that no case has held that a plaintiff pleading this type of case must specify exact quantities and an exact period of exposure. The cases cited by Defendants do not support such a position even though they would like the Court to believe they do. In the case *In re State Public Bld. Asbestos Lit.*, the court granted a new trial because, although plaintiffs had proved that all of the named defendants had asbestos-containing products in at least one of the school buildings, the jury awarded no damages. 454 S.E.2d 413, 417-418 (W. Va. 1995). The case went

-12-

to trial only on the issue of whether any of the defendants's products were actually present in the building.  *Id.*   The Defendants' reliance on *Tolley v. Caraboline Co.* is equally misplaced.  617 S.E.2d 508 (W. Va. 2005).  In that case, the court upheld the grant of summary judgment because plaintiff had failed to show that he was actually exposed to the chemical allegedly causing damage.  Although hardly comparable, these case can only be read to offer support that Plaintiff has provided adequate identification of Defendants at this stage in the litigation.

Similarly, the cases *Bellith v. Allied Signal*, Case No. BC 285147 (Cal. Super. Ct., April 9, 2003)(Def.'s Ex. 3) and *Shannon v. Air Prods. & Chems., Inc.*, No. CAM-L-1242-05 (N.J. Super. Ct., Camden City), Order of June 24, 2005 (Def.'s Ex. 5) are equally distinguishable.  In both cases, the court dismissed the plaintiff's complaint because the plaintiff failed to identify the particular toxic chemical which he claimed caused damages.  In addition, the plaintiffs in both cases failed to provide any time period of exposure.  The plaintiff in *Shannon* also did not provide any information as to where he worked or the types of jobs he performed, so as to give some indication of which defendant is responsible for the alleged exposure.  The complaint in the present case does not suffer these deficiencies.

Contrary to Defendants' assertions, Plaintiff has made sufficient allegations to state valid product liability claims.  Plaintiff has alleged that the Manufacturer/Supplier Defendants supplied vinyl chloride monomer, a specifically named product allegedly defective and unreasonably dangerous due to its design and due to the lack of warnings to Plaintiff's employer.  *See, e.g.,* Compl. at ¶¶ 9, 248-251.  Plaintiff alleges that his decedent was a forseeable user of the defective and unreasonably dangerous product, and that the product caused his death.  *See id.* at ¶¶ 252, 259.  He also alleges that the Manufacturer/Supplier Defendants knew that vinyl chloride products were

-13-

inherently and unreasonably dangerous and defective when inhaled, absorbed or ingested, but failed to warn of these dangers and breached certain warranties. *See id.* at ¶¶ 252-256, 263-272. He further alleges that the product was defective when it left the Defendants' control. *Id.* at ¶ 262. The Plaintiff need not allege anything more to state a claim for product liability.

Plaintiff admits that in order to prevail on the product liability claims, he must prove which Defendants supplied the product to which his decedent was exposed. At this stage, however, he has properly alleged and given notice to those Defendants he believes has caused the injury. *See* Compl. at ¶9. Furthermore, West Virginia has adopted the alternative form of liability for "concert of action." *See Price v. Halstead*, 355 S.E.2d 380 (W. Va. 1987); *Courtney v. Courtney*, 413 S.E.2d 418 (W. Va. 1991). In *Price*, the court adopted the rule found in Section 876(b) of the Restatement (2d) of Torts (1979), "Persons Acting in Concert": "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he...(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." *Price*, 355 S.E.2d at 386 (citations omitted). In *Courtney*, the court further adopted Comment d. to Section 876(b) which identifies six criteria to use to determine if a defendant shall be liable for assisting or encouraging a tort:

    a. the nature of the act encouraged;

    b. the amount of assistance given by the defendant;

    c. the defendant's presence or absence at the time of the tort;

    d. the defendant's relation to the other tortfeasor;

    e. the defendant's state of mind; and

    f. the foreseeability of the harm that occurred.

*Courtney*, 413 S.E.2d at 426. The court emphasized that this list is non-exhaustive. *Id.* The Supreme Court of Appeals of West Virginia has applied this "concert of action" theory to support a cause of action holding a third party liable for inducing a physician to breach the fiduciary relationship by disclosing confidential information. *See Morris v. Consolidation Coal Co.*, 446 S.E.2d 648, 657 (W. Va. 1994).

This Court has previously applied the concert of action theory to a case involving RICO claims. *Clark v. Milam*, 847 F.Supp. 409 (S.D.W. Va. 1994). In that case, two named defendants filed a motion to dismiss plaintiff's state law claims of "aiding and abetting (1) breach of a fiduciary duty; and (2) aiding and abetting a constructive fraud." *Id.* at 419. Although the defendants argued that West Virginia did not recognize a claim for aiding and abetting, the Court found otherwise, stating that "West Virginia clearly recognizes aiding and abetting tortious conduct." *Id.* The Court denied the motion to dismiss and ruled that while the *Courtney* court did not use the terms "aiding and abetting," plaintiffs allegations are actionable under the standard of "substantial assistance or encouragement." *Id.* at 419 n.21, 420. *Cf. Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1016 (D.S.C. 1981)("A close reading of s 876 of the Restatement suggests that the gravamen of the theory is that the parties participated in some concerted conduct that was tortious in nature... a plaintiff seeking to base a complaint on a concert of action theory would have to prove in addition to parallel course of conduct among defendants, evidence of some agreement express or tacit or a common plan among manufacturers not to test adequately or not to warn of dangers that were known.").

Plaintiff has alleged that each of the Defendant Manufacturer/Suppliers provided a known defective product which caused the injury, and that each Defendant failed to warn Plaintiff's decedent of the dangers. If Plaintiff can also show that any or all of the Defendants knew of each other's

tortious conduct and provided substantial assistance or encouragement of such conduct, then those Defendants may be liable. *See Hogan v. Goodrich Corp., et al.*, No. Civ.A. 05-159-C, 2006 WL 149011 (W.D. Ky. Jan. 17, 2006)(court denied dismissal of product liability claim in case involving similar parties and complaint and held that defendants may be liable based on "concert of action" theory). While Plaintiff may not be able to prove this "concert of action" theory of liability as adopted by the *Courtney* court, Plaintiff has alleged sufficient facts to survive a motion to dismiss.

## C.      Defendants' Motion to Dismiss Count VII - Fraud based claim

The Manufacturer/Supplier Defendants also moved for dismissal of Count VII which alleges that these Defendants knowingly and fraudulently misrepresented and concealed the dangers of VCM, and Plaintiff's decedent relied upon the misrepresentations and concealment. Defendants argue that Plaintiff's fraud based claim fails due to lack of particularity for essentially two reasons: (1) Plaintiff alleges that Defendants, as a collective, engaged in the fraudulent behavior without specifying which Defendant; and (2) Plaintiff has not pled that decedent relied upon any fraudulent misrepresentations. The Defendants also argue that to the extent Plaintiffs claims are based upon fraudulent concealment, the claims must be dismissed because Plaintiff has not pled any duty to disclose by any Defendant.

### 1.      Fraudulent Misrepresentations

In order to state a claim for fraud under West Virginia law, a plaintiff must plead and prove that: (1) the act of fraud was committed by the defendant; (2) the act was material and false; (3) the plaintiff justifiably relied upon the misrepresentation; and (4) the plaintiff was damaged because of his reliance. *See Lengyl v. Lint*, 280 S.E.2d 66, 69 (W. Va. 1981). Both parties agree that these claims must meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which

provides that a claim based upon fraud must be pled with particularity.  *See* Fed. R. Civ. Pro 9(b) ("in all averments of fraud or mistake, the circumstances consituting fraud or mistake shall be stated with particularity").  In order to satisfy the pleading requirements, a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)(citations omitted).  Of course, "a court also must liberally construe a complaint in accordance with the spirit of the notice-pleading procedure of the Federal Rules of Civil Procedure." *Holland v. Cline Bros. Min. Co., Inc.*, 877 F.Supp. 308, 317 (S.D.W. Va. 1995).

Without discussing every relevant instance, the Court finds that the Plaintiff does specify which Defendants engaged in what activity.  Although only briefly discussed, the cases Defendants cite in support of its position are readily distinguishable.  *See* Def. Mot. to Dis. at 11.  In the cases cited, the plaintiffs' complaint  failed for similar reasons: in one section the plaintiff named defendants, and then in one or two paragraphs simply stated that "all defendants" committed the fraud with no further explanation of specific conduct.  One of the reasons for Rule 9(b)'s requirement of particularity is to ensure that "the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." *Harrison*, 176 F.3d at 784. In the instant case, Plaintiff has provided detailed allegations as to which Defendant engaged in what fraudulent activity, when and where that activity occurred, and what that Defendant allegedly misrepresented.  *See* Compl. at ¶¶26-59, 210.  Each Defendant is certainly put on notice of their alleged fraudulent conduct.[4]

---

[4]To the extent that Defendant argues that the Plaintiff only alleges fraud against "Defendants," as in the plural form, this argument is not well taken.  The Court believes that the Plaintiff created groupings of certain Defendants in an attempt to make the complaint easier to read.  The Plaintiff lists exactly which

(continued...)

The majority of Defendants' argument centers upon their contention that Plaintiff has not pled decedent's reliance.  Defendants cite to decisions in other courts dismissing complaints involving VCM exposure and many of the same parties, and argue that this complaint should likewise be dismissed.  However, those other cases are distinguishable.  The court in *Anderson v. Airco, Inc.* dismissed the fraud claims because "[a]lthough the Complaint specifies the time, place and contents of the alleged false representations...there is no allegation of any representation to [plaintiff] directly or indirectly as an employee of any Non-Supplier Defendant or of a company supplied with such defendants products." No. Civ. A. 02C-12-091HDR, 2004 WL 1551484, *7 (Del. Super. June 30, 2004).  Likewise, the court in *Bogner v. Airco, Inc.* dismissed counts alleging a conspiracy to defraud because they failed to assert that various misrepresentations or omissions were conveyed to plaintiff. No. 02-1157, 2003 WL 24121083, *4 (C.D. Ill April 1, 2003).  The court explained that the "complaint does not indicate who made SD-56 available at the plant, when it was available, whether it was somewhere where [plaintiff] would have seen it, or whether [plaintiff] did in fact see it." *Id.* at *5.

Unlike these cases, Plaintiff has alleged reliance of fraudulent misrepresentations by Plaintiff's decedent.  These misrepresentations were communicated to Plaintiff's decedent by his employers.  The Plaintiff cites to an unpublished Fourth Circuit opinion to support his contention. *Basham v. General Shale Products Corp.*, Nos. 92-1608, 02-1607, 1993 WL 65086 (4th Cir. March

---

[4](...continued)

Defendants comprise each of the groupings.  The complaint does not present the same concerns as one where multiple defendants are named, and then allegations are just made against them as a group.  The Defendants are aware of exactly which Defendants Plaintiff is referring to when he claims, for example, that the Manufacturer/Supplier defendants engaged in certain activity.  Further, the detailed paragraphs do state what each individual Defendant allegedly did.

10, 1993).  That case involved multiple homeowners suing the manufacturer of allegedly defective bricks used in the construction of their homes.  *Id.* at *1.  The plaintiffs argued that they satisfied the reliance element of their fraud claim by alleging that they bought the bricks from third-party retailers who had relied upon the defendant's fraudulent misrepresentations of the quality of its bricks.  *Id.* at *4.  The Fourth Circuit ultimately dismissed the plaintiffs' fraud claim.  However, the court cited with approval the rule of law from a West Virginia Supreme Court of Appeals case which states: "although the [mis]representations...were not made directly to the party deceived...but to another, *who communicated them to [the plaintiff] and thereby misled him to his injury*, the person making such false representations is liable."  *Id.* (citing *Lowance v. Johnson*, 84 S.E. 937, 940 (W. Va. 1915))(modifications in original).  In dismissing plaintiffs' claim, the court stated that "[u]nlike in *Lowance*, the appellants here failed to allege - or even contend on appeal- that the third-party brick retailers and homebuilders communicated the alleged misrepresentations to them."  *Id.*  The only allegation of reliance by plaintiffs was that since they were for sale in retail stores, then it is assumed that they will last a lifetime.  *Id.*

In this case, Plaintiff has alleged more than the plaintiffs in *Basham* or in the other cases cited by Defendants.  Unlike the *Basham* case, Plaintiff does not imply reliance by alleging that since his employers required him to work with VCM, decedent assumed it was safe.  Plaintiff specifically alleges that decedent's employers communicated the alleged fraudulent misrepresentations of the safety of VCM.  *See* Compl. at ¶ 189, 280.  However, in their reply memorandum, Defendants argue that Plaintiff's fraud claim must fail because "he cannot and does not allege that *decedent* ever saw SD-56."  Reply Mem. at 5-6.  Actually,  Plaintiff specifically alleges that decedent was provided a copy of SD-56 by his employer.

-19-

In paragraph 34, Plaintiff states:

> SD-56 *was distributed by Pantasote, Gencorp* and the Manufacturer/Supplier defendants *to employees* and customers with the intent that it be relied upon throughout the industry..SD-56 was relied upon...by the plaintiff's decedent.

Compl. at ¶ 34 (emphasis added).   Again at paragraph 239, Plaintiff states in reference to the Manufacturer/Supplier and Conspiracy Defendants:

> The defendants provided substantial assistance to Pantasote and defendant Gencorp, plaintiff's decedent's employers, by assisting in the drafting, approval, publication and dissemination of SD-56, which was a deliberately misleading and fraudulent MCA chemical safety data sheet *that was provided to plaintiff's decedent*...

*Id.* at ¶ 239 (emphasis added).

The *Anderson v. Airco* case cited by Defendants adds support to Plaintiff's claim as well.  As quoted above, the court dismissed the fraud claims because the complaint contained "there is no allegation of any representation *to [plaintiff] directly or indirectly as an employee of any Non-Supplier Defendant or of a company supplied with such defendants products*." 2004 WL 1551484 at *7.  In this case, Plaintiff does allege that his decedent received, and was provided fraudulent misrepresentations indirectly as an employee of a company supplied with the product.  Plaintiff also adequately alleges that Plaintiff's decedent relied upon various misrepresentations, including those found in SD-56.  *See* Compl. at ¶ 286 ("plaintiff's decedent relied, to his detriment, upon SD-56, the materially false safety data sheet, supplied by the defendants").

In determining whether to dismiss fraud claims under Rule 9(b), the Fourth Circuit has advised that a court should hesitate to dismiss a complaint if the court is "satisfied (1) that the

-20-

defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.  Following this guidance and for the other reasons stated above, the Court denies the dismissal of Counts VII as to fraudulent misrepresentations.

###    2.    Fraudulent Concealment

Defendants further argue that to the extent that Plaintiff's claim is based upon fraudulent concealment rather than fraudulent misrepresentation, Plaintiff's claim must fail.  Under West Virginia law, "[f]raudulent concealment involves concealment of facts by one with knowledge, or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Livingston v. K-Mart Corp.*, 32 F.Supp.2d 369, 374 (S.D.W. Va. 1998) (citing *Pocahontas Mining Co. Ltd. Partnership v. Oxy USA, Inc.*, 503 S.E.2d 258, 263 (W. Va. 1998)).  In this case, Defendants argue that no duty exists between the manufacturer/supplier of a product and a potential plaintiff whose work involved use of that product.   However, Defendants fail to appreciate the nature of Plaintiff's claim.

As discussed above, Plaintiff has properly alleged a product liability claim, including a failure to warn claim.  Plaintiff specifically claims that Defendants had a duty to warn of the allegedly defective and unreasonably dangerous product to Plaintiff's decedent, a foreseeable user of the product.  Instead of warning of the dangers of the product, Plaintiff alleges that Defendants engaged in certain activity to conceal those dangers.  In this case, it is the duty to warn in the context of products liability which supports the fraudulent concealment claim.  Therefore, Plaintiff has alleged sufficient facts to support a claim for fraudulent concealment.

**D.**     **Defendants' Motions to Dismiss Counts III & IV - Conspiracy, Aiding & Abetting Claims**

In Count III of his complaint, Plaintiff asserts a claim for civil conspiracy to commit tortious conduct against each Defendant.  A claim for civil conspiracy under West Virginia law is a "combination to commit a tort."  *Hays v. Bankers Trust Co. of California* , 46 F.Supp.2d 490, 497 (S.D.W. Va. 1999)(citations omitted).  The cause of action is based not upon the conspiracy, but rather upon the wrongful acts done by the Defendants.  *Dixon v. American Indus. Leasing Co.*, 253 S.E.2d 150, 152 (W. Va. 1979).  In order for a claim for conspiracy to be actionable, the plaintiff must prove that the defendants have actually committed some wrongful act.  *Hays*, 46 F.Supp.2d at 497.

In Count IV of his complaint, Plaintiff asserts a claim against the Manufacturer/Supplier and Conspiracy Defendants for "aiding and abetting Pantasote and Defendant Gencorp."  Compl. at 86. In section B above, the Court has discussed the ability to hold multiple Defendants liable under the theory of aiding and abetting.  Like a conspiracy claim, the ability to recover for aiding and abetting necessarily depends upon the ability of a plaintiff to prove the underlying tort.  *See Clark v. Milam*, 847 F.Supp. 409, 419-420 (S.D.W. Va. 1994)("West Virginia clearly recognizes aiding and abetting tortious conduct").

This Court has found that Plaintiff has properly pled claims for employer intentional tort against Gencorp, and fraud claims against Gencorp and the Manufacturer/Supplier Defendants. Plaintiff may be able to prove either of those claims as the necessary underlying tort in order to hold each and every other Defendant liable for either a civil conspiracy or aiding and abetting.  Therefore, the Court will not dismiss either the civil conspiracy claim or the aiding and abetting claim.

### E.     Punitive Damages Claim Count VIII

Finally, Defendants argue that Count VIII should be dismissed.  In Count VIII, Plaintiff states a separate claim for punitive damages against all Defendants.  This Court has previously noted that a separate "cause of action" for punitive damages is not recognized by the state of West Virginia. *Miller v. Carelink Health Plans, Inc.*, 82 F.Supp.2d 574, 579 n.6 (S.D.W. Va. 2000)(citing *Cook v. Heck's Inc.*, 342 S.E.2d 453, 461 (W. Va. 1986)); *see also Miller v. SMS Schloemann-Siemag, Inc.*, 203 F.Supp.2d 633, 639-640 (S.D.W. Va. 2002)("Although Count Four appears aimed solely at the recovery of punitive damages, such damages are not recognized under the law to express a separate cause of action").  Rather, punitive damages are a form of relief.  *Id.*  Accordingly, the Court dismisses Count VIII.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions to dismiss Count VIII, and **DENIES** the motions to dismiss Counts III-VII of Defendants American Chemistry Council, Goodrich Corporation , PPG Industries, Inc., Shell Oil Company, and Zeneca, Inc.(Doc. 49), and the Defendants joining in that motion, Goodyear Tire & Rubber Company (Doc. 64),  Rhone-Poulenc, Inc. (Doc. 51), Air Products & Chemicals, Inc. (Doc. 65),  Ethyl Corporation (Doc. 66), Olin Corporation (Doc. 67), Pactiv Corporation (Doc. 68), Dow Chemical Company (Doc. 53),  Union Carbide Corporation (Doc. 53), Honeywell International, Inc. (Doc. 53), Tenneco Automotives, Inc. (Doc. 63), Georgia Pacific Corporation (Doc. 60), Chevron U.S.A. Inc. (Doc. 54), Pharmacia Corporation (Doc. 58), Hexion Specialty Chemicals, Inc. (Doc. 52), Uniroyal, Inc. (Doc. 99), and Polyone Corporation (Doc. 149).  In addition, the Court **DENIES** Gencorp, Inc.'s motion to dismiss Counts I-IV (Doc. 55).

The Court **DIRECTS** the Clerk to send a copy of this written opinion to counsel of record and any unrepresented parties, and to publish this opinion on the Court's website.

ENTER:        May 9, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE